## THOMAS J. FREEMAN, RECEIVER, v. JOHN E. BARRY.

Decided December 12, 1910.

### 1.—Receivership—Contracts of Insolvent—Liability of Receiver.

As a general rule, there could be no liability on the part of a receiver for the purchase price of property which came into his hands as property of an insolvent. Evidence considered, and held to show that the title and possession of certain property, for the purchase price of which a receiver was sued, had passed to and vested in the insolvent before the receiver was appointed, and came into the hands of the receiver as property of the insolvent; hence a judgment against the receiver for the purchase price was not warranted.

### 2.—Same—Priority of Claims—Jurisdiction.

The question of priority of claims against an insolvent for whom a receiver has been appointed, can only be adjudicated in the court in which the receivership is pending. This rule applied in a suit against a railroad company and

its receiver for the purchase price of railroad ties bought by the railroad company but used by the receiver in the maintenance of the road.

**3.—Same—Estoppel—Insufficient Evidence.**

Evidence considered, and held insufficient to establish an estoppel against a receiver of a railroad company to deny his liability for the purchase price of railroad ties received by him and used in the maintenance of the road.

Appeal from the District Court of Anderson County. Tried below before Hon. B. H. Gardner.

*King & Morris* and *R. S. Shapard,* for appellant.

*Campbell, Sewell & Strickland,* for appellee. .

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellee against the' International & Great Northern Railroad Company and the appellant Freeman, as receiver of said company, to recover the contract price of 16 car loads of railroad ties alleged to have been sold and delivered by plaintiff to the defendants.

The Railroad Company answered by general demurrer and general denial. The appellant receiver, in addition to general and special exceptions and general denial, answered by special pleas, the nature of which will be hereinafter indicated.

The trial of the cause in the court below without a jury resulted in a judgment in favor of plaintiff against both defendants for the sum of $2050.80 with interest from March 15, 1908, at the rate of six per cent per annum. This appeal is by the receiver only. The facts are these:

On February 17, 1908, appellee entered into a contract with the International & Great Northern Railroad Company to furnish said company 150,000 railroad ties at a price named in said contract, said ties to be "loaded by the second party (appellee) f. o. b. cars on the Transcontinental Division of the Texas & Pacific Railway between Texarkana and a point ten miles west of Clarksville." This contract further provides that "the first party (railroad company) will, if practicable, furnish an inspector on the ground to inspect said ties as they are loaded onto the cars, but in event that it does not furnish such inspector on the ground, it reserves the right to have said ties inspected at destination on its line of railroad."

The 16 carloads of ties involved in the suit were the first deliveries made by appellee under said contract. These ties were loaded on cars by the appellee in accordance with his contract on the following dates: On February 24th, 3 cars; on February 25th, 7 cars; and on February 26, 1908, 6 cars. The ties were inspected and received by an agent and inspector of the International & Great Northern Railroad Company at the time they were loaded, and were forwarded from the receiving station by said agent under a bill of lading showing such agent to be the consignor, and the International & Great Northern Railroad Com-

pany the consignee, and which contained no reservations or restrictions as to the title to the ties. The ties reached the line of the International & Great Northern Railroad on the following dates: 9 cars on February 27th; 6 cars on February 28th, and 1 car on February 29, 1908.

Appellant, T. J. Freeman, was duly appointed receiver for the International & Great Northern Railroad Company by the United States Circuit Court for the Northern District of Texas on February 26, 1908, and duly qualified as such receiver at 12 o'clock m. on said date. Immediately upon his qualification appellant took possession of all of the property of said railroad, and is now in charge of and administering same as receiver.

On February 27th appellant issued the following notice:

"International & Great Northern Railroad Company,

Thomas J. Freeman, Receiver.

Circular No. 1.

"Palestine, Texas, February 27, 1908.

"Notice is hereby given that I have this day been appointed Receiver of the International & Great Northern Railroad Company, by order of the United States Court. I have taken possession of the property of said Company, and have entered upon the discharge of my duties as directed by the court.

"All officers and agents now in the service of said company, having accepted service under me, are hereby continued in service as Receiver's Agents until otherwise ordered.

"Thomas J. Freeman, Receiver."

The ties in question were used by the receiver in repairing the road-bed of the insolvent company.

On the morning of February 27th, appellee began the loading of other ties to be shipped to the railroad company under his contract, and shortly thereafter learned that the company had gone into the hands of a receiver. Upon obtaining this information he decided that he had better not proceed further in carrying out his contract until he could have an understanding with the receiver, and he at once called up by telephone Mr. Crittenden, the purchasing agent of the railroad company, with whom he had made the original contract and who, under the notice issued by the receiver before set out, was authorized to act for the receiver as such agent, and talked with him in regard to the matter. Appellee testified that he asked Crittenden "what about payment for the ties that had gone forward and what about future payments, and if the receiver would take up his contract," and that Crittenden told him that he need have no uneasiness whatever, "that it was a friendly receivership and the company would be in much better shape to pay off their debts than they had ever been; that the ties already shipped would

be paid for promptly as agreed in the contract, and that I should continue shipping, which I did." Appellee continued shipping ties under his contract for several days and then went to Palestine and saw Crittenden in person and was again assured by him that all of the money due would be paid according to contract, and agreed to come back that evening and he, Crittenden, would let him know whether he would give him a contract to furnish additional ties for the receiver. When appellee returned to Crittenden's office that evening the latter declined to make a contract for any more ties than those called for in the original contract, but told appellee to continue to carry out the original contract. Appellee continued to ship ties under this contract, and at the end of the month sent in his bill for all the ties shipped during said month, including those involved in this suit. When this bill was settled, about 60 days thereafter, he was not paid for the 16 car loads shipped before the appointment of the receiver.

The contract price for these 16 car loads of ties was the amount recovered by appellee by the judgment of the court below. Appellee testified that he would not have shipped any more ties to the receiver under his contract and would have taken immediate steps to secure payment for the 16 car loads but for the promise of Crittenden that he would be paid promptly. His testimony on this point is as follows:

"If Mr. Crittenden had not assured me that they would be paid for promptly, I would have taken some legal steps to have stopped them in transit. I would have taken it up with attorneys and placed the matter in their hands.

"I did not know that the company would refuse to pay me for some sixty days after I shipped the ties I was relying on the statements made by Mr. Crittenden. I did not hear anything to the contrary until they refused to pay me. I shipped about 16,000 ties after the 27th. But for Mr. Crittenden's representations I would have consulted an attorney and have done as he advised me to proceed with reference to the other ties."

He further testified: "I went to see Judge Freeman, and he repudiated the contract, but he finally took the balance at a different rate of payment, however. He made a new contract with me and took the balance. Mr. Crittenden told me I would have to see him. I had never seen him before about this particular matter.

"The 16,000 included what Mr. Woodward (the inspector) had previously taken up on the 26th and 27th. Mr. Woodward had some more ties, and then Mr. Schelling went back with me on the next Monday. The company paid me for those that Mr. Woodward took up on the 27th, and for those that Mr. Schelling took up when he came. The company paid me for those at the rate fixed in the old contract. About sixty days after that, they repudiated the old contract, and I entered into a new one to furnish the ties at a less rate than that fixed in the old one; I had to do it; I had bought the ties and had no one else to sell them to at that time. They put a provision in the new contract releasing the company from any liability under the old contract except for what

had been already been delivered.  That cost me over a hundred dollars to make that new contract."

Appellee pleaded the facts above stated in regard to the promise of Crittenden to pay for the ties shipped the railroad company before the appointment of the receiver and the reliance of appellee upon such promise, as an estoppel against appellant.

The special plea of appellant, before mentioned, avers that the ties in question were the property of the railroad company prior to and at the time of his appointment as receiver, and came into his possession as property of said company, and he was therefore not liable as receiver for the contract price of said ties.  In answer to appellee's plea of estoppel, appellant further pleaded want of authority in Crittenden to make the agreement to pay for said ties, and want of consideration for such agreement.

It is clear under the facts above stated that the title and possession of the ties in question had passed to the International & Great Northern Railroad Company before appellant became receiver of said company, and appellee does not contend otherwise.  It follows as a general rule that there could be no liability on the part of the receiver for the purchase price of the ties which came into his possession as the property of the railroad company.  Appellee insists, however, that the judgment in this case should be affirmed because, first, the ties having been used by the receiver in repairing the road, and being necessary in preserving the property and enabling the receiver to carry on the business of the road, appellee is entitled to be paid therefor out of the funds of the receivership; and second, because the receiver is estopped to deny his liability to appellee for the amount due for said ties because of the agreement and promise of his agent Crittenden to pay said amount, and appellee's reliance thereon, and consequent forbearance to take steps to recover the ties or enforce his statutory lien for the contract price therefor, and because of the acceptance by the receiver of the benefits of appellee's contract with the railroad company.

In answer to appellee's first proposition, it is sufficient to say that the question of priority of payment of claims against the railroad company is not involved in this suit.  If under the rules of equity appellee should be held entitled to have his claim allowed as a lien upon the funds of the receivership, such allowance must be made by the court in which the receivership is pending, and the right to such allowance does not authorize a recovery against the receiver in this suit. Under the rule announced in the case of Gregg v. Trust Co., 197 U. S., 182, it would seem that appellee is not entitled to any lien upon the funds of the receivership to secure the payment of his claim; but, as before said, that question is not involved in this suit.

We think it clear that the facts do not raise the issue of estoppel, if indeed a liability could be fixed upon a receiver as such by estoppel. The title and possession of the property having passed to the railroad company, and there being neither allegations nor proof that the possession was obtained by the company through fraud and with no inten-

tion of paying for the ties, appellee could not have recovered them from the receiver, and no right of stoppage in transit existed. Appellee's right under the statute to fix a lien upon the road was not lost by his reliance upon the promise of Crittenden. The time given by the statute in which such lien could have been fixed did not expire until months after Crittenden's agreement had been repudiated by the appellant, and appellee had ample time after he knew that appellant would not pay for the ties, to fix his lien. Arts. 3294 and 3295, Sayles' Civil Statutes. Under these facts appellee lost nothing by his reliance upon Crittenden's promise, and therefore the most essential element of estoppel is lacking.

It follows from these views of the legal effect of the undisputed evidence, that the judgment of the court below should be reversed and judgment here rendered for the appellant, and it has been so ordered.

*Reversed and rendered.*